UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF PASCUAL O. ESTRADA, | ) | CASE NO. 1:15-cv-364 |
| c/o Nora M. Maffei, Executor, | ) | |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| UNITED STATES DEPARTMENT OF | ) | |
| VETERANS AFFAIRS, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is defendant's motion to dismiss both under the doctrine of res judicata and for failure to state a claim upon which relief can be granted. (Doc. No. 5, Motion ["Mot."].) Plaintiff has filed a brief in opposition (Doc. No. 6, Opposition ["Opp'n"]) and defendant filed a reply (Doc. No. 7, Reply ["Reply"]). For the reasons set forth herein, the motion is denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case has a slightly complicated procedural history, which is relevant to the analysis of the instant motion. On February 25, 2015, when the complaint herein was filed ("Case 2"), the accompanying civil cover sheet, as well as the complaint itself, indicated relatedness to Case No. 1:12-cv-2215, *Estate of Pascual O. Estrada, et al. v. U.S. Dep't of Veterans Affairs* ("Case 1"). The caption of the complaint in Case 2 identifies the case as a "Re-file of Case No. 1:12-cv-2215."

Case 1 was on the docket of Senior Judge Lesley Wells; Case 2, upon its filing, was assigned to Judge Wells due to the relatedness of the two cases. On October 6, 2015, upon

the retirement of Judge Wells, Case 2 was reassigned to the docket of the undersigned pursuant to General Order 2015-12. Case 1 was not reassigned, since it was already closed; however, the proceedings in Case 1 are relevant to the instant motion.

Case 1 was brought on behalf of two plaintiffs (Estate of Pascual O. Estrada c/o Nora M. Maffei, Executor ("the Estate") and Nora M. Maffei ("Maffei")), whereas Case 2 is brought solely on behalf of the Estate. In Case 1, there were three federal claims (one under the Americans with Disabilities Act, one under the Rehabilitation Act of 1973, and one under the Federal Tort Claims Act), in addition to two counts brought under Ohio statutory and common law. Case 2 raises a sole federal claim under the Rehabilitation Act of 1973, as well as the same Ohio claims as in Case 1.

The underlying factual allegations are virtually identical in the two cases. For comparison purposes, the Court quotes herein the factual allegations from the amended complaint (Doc. No. 12) in Case 1, ¶¶ 7-16, as compared to the complaint (Doc. No. 1) in Case 2. The Case 2 modifications (except for paragraph numbers, which all vary by one since there was one fewer party listed in the earlier paragraphs) are shown by way of bold/bracketed text for additions and bold/stricken text for deletions:

> 7. On August 30, 2010, **[Nora]** Maffei**[, who is Estrada's daughter and executor of the Estate,]** took Estrada to the VA Medical Center for an appointment with Dr. Olivares. Maffei and Estrada, who was in a wheelchair, were met by a patient escort. The escort told Maffei and Estrada that he had to take them to the x-ray department so Estrada could be x-rayed. The escort pushed Estrada in his wheelchair to the x-ray department and left him there while Maffei waited.
>
> 8. A few minutes after Estrada was wheeled into the x-ray department a very heavy (approximately 300 pound) white male with black hair ("unknown male x-ray orderly") came out of the x-ray department to speak to Maffei. He told Maffei, "I need you". Maffei immediately thought he needed her to interpret

because Estrada did not speak or understand English very well. So, Maffei followed him into the x-ray department.

9. Once inside the x-ray room, Maffei saw Estrada still in his wheelchair alongside an x-ray table. On the other side of the x-ray table Maffei noticed another orderly, who was a tall white female with blonde hair. The unknown male x-ray orderly said to Maffei, "how do you transport your dad?" Maffei answered, "What do you mean? You lift the side handle of the wheelchair up - there's a button there." He said, "how do you lift your father up?" Maffei said, "I don't have to - we have a caregiver that does that." Maffei suggested that he should push the wheelchair close to the table and then push the button on the side rail and lift her father onto the x-ray table.

10. The unknown male x-ray orderly absolutely refused to lift Estrada out of the wheelchair and onto the x-ray table. He yelled at Maffei, "I'm not going to do it. I'm not going to hurt my back. You're going to have to lift him if you want the x-ray done". He made clear that he wouldn't do the x-ray unless Maffei lifted her father onto the table. The x-ray table was not compliant and accommodating so that Estrada could independently transfer himself from his wheelchair onto the table.

11. Maffei bent down and, in Spanish, spoke into her father's ear and told him to put his arms around her and hold on to her tightly. He kept saying in Spanish that he could not understand why Maffei had to lift him when there were two orderlies there **[and he began to cry because of the humiliation and the pain caused him by Maffei trying to lift him]**.

12. Maffei struggled but managed to lift her father onto the x-ray table while the orderlies watched. She then left while the x-rays were taken. About ten minutes or so later the unknown male x-ray orderly came back out to get Maffei. He told her that she had to go back into x-ray and get her father off the table and back into his wheelchair. Maffei could not believe it but went back and lifted her father off the table and got him back into the wheelchair while they watched. **[Again Estrada was in pain from Maffei trying to lift him and suffered the humiliation and indignity of his daughter having to help him rather than the orderly.]**

13. The patient escort then came to get Maffei and Estrada and take them up to the sixth floor to see Dr. Olivares. Maffei told Dr. Olivares what happened and he was furious. **[Estrada suffered the indignity and humiliation of having to be lifted onto the x-ray table of a Government facility by his daughter because the Government orderlies refused to life Estrada and because the Government's x-ray table was no compliant with disability law.]**

> ~~14.    The next day Maffei was in terrible pain from having to lift her father. On September 4 she passed out and her daughter, who was supposed to leave the Cleveland area by airplane had to cancel her trip to care for Maffei. Dr. Olivares wrote a letter for Maffei's daughter to present to the airline explaining the cancellation was because she had to stay and help her mother who was injured having to lift Estrada.~~
>
> ~~15.    On September 11, 2010, Maffei filled out and presented to Defendant, through Charles Calhoun, Defendant's Patient Advocate, Standard Form 95, a Claim for Damage, Injury, or Death (a copy of which is attached hereto as Exhibit 1) which detailed the August 30, 2010 incident.~~
>
> ~~16.    Defendant never formally denied Maffei's claim, nor did Defendant finally dispose of the claim within six months after it was filed. Accordingly, Maffei has exhausted her administrative remedies.~~
>
> * * *
>
> 20.[1]    By engaging in the above-described acts and omissions, including failing and refusing to lift Estrada onto the x-ray table; forcing Maffei to lift her father onto the x-ray table; and maintaining a non-compliant x-ray table, Defendant has violated ~~28 U.S.C. § 1346(a)(2) and/or~~ the Rehabilitation Act.

In Case 1, on January 3, 2013, defendant United States Department of Veterans Affairs ("the VA") filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. The motion was neither clear nor precise. In its introduction, the motion stated: "On August 29, 2012, Plaintiff Estate of Pascual O. Estrada and Nora M. Maffei ("Plaintiff") filed a complaint" against the VA. (Case 1, Doc. No. 14-1 at 67.)[2] The VA thereby recognized that there were two plaintiffs, but appeared to be moving for dismissal as to only one of them, i.e., Nora M. Maffei, characterized as "plaintiff." But, despite this reference to only one plaintiff, the VA moved "to dismiss *the case*[.]" (*Id.* at 68, emphasis added.) The VA then went on to argue that (1) the court lacked subject matter jurisdiction "because Plaintiff failed to allege that she exhausted her administrative remedies under the

---

[1] This is paragraph 14 in the Complaint in Case 2.

[2] All page number references are to the page identification number generated by the Court's electronic docketing system.

FTCA" (*id.* at 70); (2) "Plaintiff fails to state a claim against [the VA] under the ADA[,]" (*id.* at 75); and (3) "Plaintiff fails to allege that she is an 'otherwise qualified individual with a disability' or that she was subject to discrimination under any program or activity receiving Federal financial assistance." (*Id.* at 75-76, citation omitted.) In conclusion, the VA requested "that [Case 1] be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted." (*Id.* at 76.)

Over plaintiffs' opposition[3] (Case 1, Doc. No. 15), on February 26, 2014, Judge Wells granted defendant's motion, dismissing Case 1 in its entirety, without prejudice, even though the VA's motion to dismiss seemed to seek dismissal of only Maffei's personal claims and even though Judge Wells's opinion addressed only those claims, with no mention of the separate claims of the Estate. (Case 1, Doc. Nos. 21, 22.)

On April 29, 2014, without citing the authority for doing so, plaintiff Estate (through Maffei as Executor) moved to reopen the case and to "reinstate the Estate's claim against Defendant for violation of Section 504 of the Rehabilitation Act, and its pendent Ohio law claim," (Case 1, Doc. No. 23 at 145.) Plaintiff argued that the VA had never moved to dismiss the Estate's claims which purportedly survived Estrada's death. (*See* Case 1, Doc. No. 23.)

The motion to reopen was fully briefed by May 30, 2014. (*See* Doc. Nos. 25 and 26, Opposition and Reply.) But, on February 25, 2015, without first requesting a ruling on the pending motion to reopen, plaintiff filed Case 2, claiming that "[b]ecause a year had passed since [the] Court's February 26, 2014 order dismissing the initial Lawsuit without prejudice, and no ruling had yet been made on the Motion To Reopen The Case, The Estate chose, on February 25,

---

[3] Plaintiffs did concede that the ADA claim should be dismissed. (*See* Case 1, Doc. No. 15 at 85, n. 2.)

2015, to re-file its case against the Government." (Opp'n at 34.) As already noted, Case 2 was assigned to Judge Wells due to its relatedness to Case 1. On March 31, 2015, Judge Wells ruled by non-document order that the motion to reopen Case 1 was moot. The VA timely filed its motion to dismiss in Case 2; that motion is now before the Court.

## II. DISCUSSION

### A.  Standard on a Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "The court need not, however, accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

**B.     Analysis**

The VA moves for dismissal on two grounds: res judicata and failure to state a claim under the Rehabilitation Act. The Court will address the latter argument first.

**1.     Failure to State a Claim Under the Rehabilitation Act**

The VA asserts, rather simplistically, that the complaint in Case 1 alleged neither that Estrada was denied any services nor that he suffered any injury, and, therefore, that the complaint fails to state a claim under the Rehabilitation Act.

The Rehabilitation Act of 1973 provides, in relevant part, that

> [n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service....

29 U.S.C. § 794. There can be no doubt that the Rehabilitation Act requires entities to reasonably accommodate persons with disabilities and that failure to do so amounts to discrimination under the act. *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 f.3d 453, 460-61 (6th Cir. 1997); *McNamara v. Ohio Bldg. Auth.*, 697 F. Supp. 2d 820, 828 (N.D. Ohio 2010).

Here, the allegation is that by "failing and refusing to lift Estrada onto the x-ray table; [by] forcing Maffei to lift her father onto the x-ray table; and [by] maintaining a non-compliant x-ray table, Defendant has violated the Rehabilitation Act."[4] (Compl. ¶ 14.) The complaint further alleges that Estrada cried "because of the humiliation and the pain" caused by these actions (*id.* ¶ 10), that he "was in pain from Maffei trying to lift him and suffered the humiliation and indignity of his daughter having to help him rather than the orderly[,] (*id.* ¶ 11), and that he "suffered the indignity and humiliation of having to be lifted onto the x-ray table of a

---

[4] These exact same allegations were pleaded in Case 1.

Government facility by his daughter because the Government orderlies refused to lift [him] and because the Government's x-ray table was not compliant with disability law." (*Id.* ¶¶ 10, 12.)[5]

Under the *Twombly* and *Iqbal* standard for a motion to dismiss, the complaint does sufficiently allege, although somewhat inartfully, both a failure to accommodate Estrada's disability (which amounts to discrimination under the Act) and resulting injury, even if only passing pain or psychological injury. *See Johnson v. City of Saline*, 151 F.3d 564, 572-73 (6th Cir. 1998) (discussing remedies under the Act and approving the availability of compensatory damages for "physical damage ..., psychological and emotional trauma, humiliation and embarrassment, anxiety, and pain and suffering.").

Given that a Rehabilitation Act claim survives one's death, *see Cook v. Hairston*, No. 90-3437, 1991 WL 253302, at *6 (6th Cir. Nov. 26, 1991) (per curiam), this claim, if not otherwise barred, could be properly asserted by the Estate.

### 2. Res Judicata Bar

Although the Estate's complaint does not fail to state a claim under the Rehabilitation Act, that does not end this Court's analysis. The VA also argues that Case 2 is barred by the doctrine of res judicata because the *entirety* of Case 1 was dismissed by Judge Wells, not just the claims of Maffei.

Analysis of this issue is complicated by the nature of the proceedings in Case 1, specifically: the VA's imprecise arguments on its motion to dismiss; Judge Wells' broad ruling on that motion which dismissed the entire case without prejudice; and plaintiff's subsequent procedural choices attempting to correct the judgment. This Court was never the assigned

---

[5] These allegations were not in the complaint in Case 1; however, given the confusion over the existence of the Estate's claims in that lawsuit, one can hardly blame plaintiff for attempting to clarify its claims.

8

judicial officer in Case 1, nor does this Court have authority to review or change the rulings in Case 1. This Court can only address the case currently before it and will do so in light of the proceedings in Case 1.

Having considered the proceedings, the briefing, and Judge Wells's February 26, 2014 ruling in Case 1,[6] the Court concludes that, since the VA did not actually move for dismissal of the Estate's claims (apparently because it incorrectly failed to perceive that the Estate was making any claims on its own behalf), those claims were improvidently included within the dismissal entered by Judge Wells. The dismissal, however, was without prejudice. Therefore, this Court must determine whether the refiling as Case 2 was proper.

Under the Ohio Savings Statute, "if the plaintiff fails otherwise than upon the merits, the plaintiff … may commence a new action within one year after … the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later." Ohio Rev. Code § 2305.19. The statute applies "where 'an action is timely commenced and is then dismissed without prejudice after the applicable statute of limitations has run.'" *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005) (quoting *Lewis v. Connor*, 487 N.E.2d 285, 287 (Ohio 1985)). In *Harris*, the Sixth Circuit also determined

---

[6] Judge Wells's memorandum of opinion and order granting the motion to dismiss in Case 1 (*see* Case 1, Doc. No. 21) addresses the FTCA claim of Maffei as unexhausted administratively, which would warrant a dismissal of that claim without prejudice. But the judgment entry (*see* Case 1, Doc. No. 22) "dismisses this action [i.e., all of Case 1] without prejudice." The memorandum of opinion quite clearly addresses the merits of Maffei's claims, as an individual, and concludes that because she "has not alleged that she has a disability … [she] fails to state a plausible claim as to herself under the Rehabilitation Act." (Case 1, Doc. No. 21 at 141.) Although noting the allegation that Estrada "was disabled at the time of the incident and that the defendant violated the Rehabilitation Act by refusing to lift him onto the x-ray table[,]" (*id.*), Judge Wells stated that "this argument seems to be based on a claim of 'associational discrimination[,]'" (*id.*, citing *Popovich v. Cuyahoga Cnty. Court of Common Pleas*, 150 F. App'x 424, 427 (6th Cir. 2005)), which "raises the question whether under the Rehabilitation Act, Ms. Maffei has standing to assert such a claim." (*Id.*) Although concluding that Maffei did have standing, Judge Wells determined that she had "present[ed] no facts by which it might be reasonably inferred that she herself was discriminated against or singled out in a discriminatory way based on her association with a disabled person." (*Id.*, internal quotation marks, alterations, and citations omitted). A close reading of Judge Well's ruling shows that she made no ruling of any kind relating to the merits of the Estate's claims, other than, without explanation, dismissing them without prejudice, along with the entire action. Like the VA, Judge Wells seemed to simply ignore the Estate's claims.

that Ohio's Saving Statute applies both to actions under 42 U.S.C. § 1983 and to so-called *Bivens* actions to recover damages for injuries caused by constitutional violations by federal agents because Congress itself did not establish either a statute of limitations or a body of tolling rules applicable to such actions. The same would hold true for the Rehabilitation Act, which borrows its statute of limitations from state law.

Here, on February 26, 2014, Judge Wells improvidently dismissed *without prejudice* (and without any explanation, least of all on the merits) the unrecognized claims of the Estate in Case 1. Therefore, the doctrine of res judicata is not a bar to this action. Further, there is nothing apparent on this record, and the VA has not argued, that, when the Estate refiled this action on February 25, 2015, the Ohio Savings Statute offered plaintiff no relief. That said, the Court is not foreclosing the possibility of such an argument at an appropriate time in Case 2.

The Court concludes that the claims of the Estate before this Court in the instant case are not barred by the doctrine of res judicata.

### III. CONCLUSION

For the reasons set forth herein, the VA's motion to dismiss (Doc. No. 5) is **DENIED**. The Court plans to set a Case Management Conference as soon as practicable. The Court also urges the parties to seriously consider early resolution of this case through some form of alternative dispute resolution.

**IT IS SO ORDERED**.

Dated: January 20, 2016

                                                  **HONORABLE SARA LIOI**
                                                  **UNITED STATES DISTRICT JUDGE**